AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>information associated with Apple ID )<br>SHAWNCAREY883@GMAIL.COM that is stored at )<br>premises controlled by Apple Inc. ) | Case No.   1:22-cm-00004 |

<div style="border:1px solid">
US DISTRICT COURT<br>
WESTERN DIST ARKANSAS<br>
**FILED**<br>
02/07/2022
</div>

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Arkansas_____ . *(identify the person or describe property to be searched and give its location):* See "Attachment A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____18_____ U.S.C. § _____922(o)_____ , and the application is based on these facts: See "Affidavit attachment"

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Phillip Garret

*Applicant's signature*

Phillip Garret, FBI Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-7-22

City and state: ~~El Dorado,~~ Texarkana, Arkansas

*Judge's signature*

HON. BARRY A. BRYANT, U.S. MAGISTRATE JUDGE

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Phillip Garrett, a Special Agent with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple, Inc. (hereafter "Apple"), to disclose to the government records and other information, including photos and videos, associated with the Apple ID SHAWNCAREY883@GMAIL.COM, which are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA.  The records and information to be disclosed by Apple and searched by the government is described in the following paragraphs, and in Attachments A and B.

2.      I have been employed as a Special Agent of the FBI since February 2013. I am currently assigned to the Little Rock Division.  In connection with my official duties, I am charged with investigating violations of federal criminal laws.  I have been involved in all aspects of federal criminal investigations, including, among other things, debriefing defendants, sources, and informants; conducting surveillance and undercover operations; executing search warrants; drafting Title III affidavits and monitoring Title III wiretaps; and analyzing documentary and physical evidence. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. §2510(7), and I am empowered by law to conduct investigations and to make arrests for federal felony offenses.  As part of my duties as a Special Agent with the FBI, I have participated in and directed investigations involving various types of fraud and, as a result of my training and

1

experience, I am familiar with the tactics, methods, and techniques of committing these various types of fraud related violations of federal law.

3.      The information in this affidavit is based upon my personal knowledge, as well as information learned from other law enforcement agencies, investigators, witnesses, and documents.  This affidavit is submitted for the limited purpose of obtaining authorization for a search warrant; as such, it does not include each fact known to the government about this investigation.

4.      Based on the facts set forth in the affidavit, I respectfully submit that there is probable cause to believe that the information described in Attachment A contains evidence, fruits, and instrumentalities related to false information provided to banks in order to acquire Paycheck Protection Program ("PPP") loans intended for business affected by the COVID-19 pandemic, in violation of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1001 (False Statement).

### Background on SBA-Paycheck Protection Program (PPP) Loans

6.      On March 27, 2020, the United States Government enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which provided economic stimulus for individuals and businesses affected by the Coronavirus pandemic.  This economic stimulus includes the Paycheck Protection Program (PPP): a series of forgivable loans, guaranteed by the Small Business Administration---an agency of the United States government. In April 2020, the CARES Act provided relief through an authorization of up to $349 billion in SBA-guaranteed forgivable loans to small businesses through the PPP.

7.      To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make

2

certain affirmative certifications to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expense; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.   In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

8.      A PPP loan application must be processed by a participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration (SBA).   Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9.      PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

10.      The PPP allows qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of one percent. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within eight weeks of receipt and use at least 75 percent of the forgiven amount for payroll.

## PROBABLE CAUSE

11      I believe the above referenced Apple ID account contains evidence related to PPP loan applications containing material misrepresentations to a financial institution acting on behalf of the SBA, which is a federal agency.

## SHAWN CAREY's LOAN APPLICATION

12.     On or about April 2021, CAREY applied for a PPP loan from Harvest Small Business Finance, LLC. According to the Harvest Small Business Finance, LLC website, Harvest Small Business Finance, LLC is a non-bank lender headquartered in Laguna Hills, California. CAREY electronically signed the loan document on April 09, 2021. The application sought a PPP loan for a business named "SHAWN CAREY," and listed CAREY as the sole proprietor of the business (SBA loan number 1122******). The business listed a gross income of $53,360.00.

13.     The application contained a PPP Borrower Application Form (SBA Form 2483) and supporting documentation. The signature on the loan application was somewhat illegible, but the signature started with "Sha" followed by a large "C," and was signed on April 09, 2021. The printed name below the signature read "Shawn Carey." The application requested a PPP loan of $12,366.00. The business address on the application is 530 Meadow Lane, El Dorado, AR 71730, which agents know, according to various law-enforcement database checks and previous law enforcement interaction, to be CAREY's known residence.

14.     Page two of the SBA Form 2482 includes a list of questions that must be answered "Yes" or "No." There is a statement above the questions which reads "*if questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*" In addition, question 5 and 6 require initials along with the yes or no answer. Question 6 reads as follows: *Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an*

4

*application for federal financial assistance, has the Applicant (if an individual) or any owner of the Application 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?*  Question 6 on the loan application is answered "No," and is initialed "CS." However, CAREY is currently on supervised release in the Western District of Arkansas following her 2016 convictions for Conspiracy to Defraud the Government with Respect to Claims (18 U.S.C. § 286) and Aggravated Identity Theft (18 U.S.C. § 1028A) in case No. 1:13-cr-10026-SOH-3.

15.    Page three of the SBA Form 2483 includes a list of certification statements that must be initialed by the borrower. The initials of "CS" are beside all the certifications, including one that reads as follows: "I further certify that *the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects.* I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000." (Emphasis added).  CAREY submitted as a supporting document for the PPP loan application a copy of Internal Revenue Service (IRS) Schedule C (Form 1040). The Schedule C lists a principal business as "SHAWN CAREY," and CAREY is listed as the proprietor of the business.  The Schedule C lists a gross profit of $59,360.00.

16.    On January 20, 2022, CAREY was interviewed by law enforcement agents related to the PPP loan application in her name. During the interview, CAREY claimed her cousin,

5

Brianna Blackmon (BLACKMON) completed the PPP loan application on CAREY's behalf. CAREY stated she did not own a business as represented in the application and was in fact on disability and unable to work. CAREY advised BLACKMON completed CAREY's PPP loan application electronically on BLACKMON's cellular phone while at CAREY's residence. CAREY said she was present while BLACKMON was completing CAREY's PPP loan application, and she went through the application with BLACKMON as she filled it out. CAREY stated the loan was approved and the $12,366 was deposited into CAREY's Simmons Banks account. CAREY advised the Simmons Bank account was opened for her disability check deposits.

17.     CAREY said BLACKMON told her she could do CAREY's loan for her and get her "some stacks," or money. CAREY said she paid BLACKMON $6,000 for her to complete CAREY's PPP loan application on CAREY's behalf. CAREY stated that once the PPP funds were deposited into her account, she then went to Simmons Bank the next day and withdrew the $6,000 cash so that she could pay BLACKMON. During the interview, CAREY commented that she didn't want to apply for the PPP loan at first because she was scared. CAREY clarified this by saying she was about to get off probation and she didn't want to go back to prison. CAREY advised that she understood that her PPP loan application contained false information.

18.     CAREY provided several names of individuals that BLACKMON had allegedly done PPP loan applications for in return for monetary compensation. CAREY said BLACKMON would request the name, social security number, photo id, and banking information for a certain individual, then she would complete their PPP loan application. CAREY said she communicated with BLACKMON via her cellular phone (Apple iPhone), and stated she had photos of BLACKMON and other information on her phone which would show BLACKMON's involvement in PPP loan fraud. According to CAREY, this information was on her cellular phone

6

due to CAREY selling BLACKMON her old Apple iPhone. CAREY clarified this by telling agents that the iPhone she sold to BLACKMON was still linked to CAREY's iCloud account. As such, when BLACKMON would save screenshots and photos, this information was going to CAREY's phone as it was also linked to CAREY's iCloud account. CAREY stated BLACKMON was unaware of this until CAREY informed her sometime later. CAREY provided consent for agents to search her phone, and voluntarily showed agents a photo of a female holding a large amount of cash. CAREY advised the female in the photo was BLACKMON. CAREY also showed agents screenshots of messages which included the identifiers of several individuals to include the name, address, social security number, etc. CAREY said her cell phone would also contain other evidence which would show BLACKMON's involvement in PPP loan fraud.

19.   During the cursory review of CAREY's phone via consent, agents observed that CAREY's iPhone was linked to the above referenced Apple ID. In addition, according to CAREY, the iPhone BLACKMON purchased from CAREY was also linked to the above referenced Apple ID around the time the fraudulent activity was occurring, allowing for CAREY to view the alleged fraudulent activity on her iPhone. On January 20, 2022, I requested that Apple Inc., preserve the contents of the account associated with SHAWNCAREY883@GMAIL.COM to prevent against the possible deletion of its contents.

20.   As such, I respectfully submit that there is probable cause to believe above referenced Apple ID account contains evidence, fruits, and instrumentalities related to false information provided to banks to acquire Paycheck Protection Program ("PPP") loans intended for businesses affected by the COVID-19 pandemic, in violation of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1001 (False Statement).

## INFORMATION REGARDING APPLE ID AND iCloud[1]

21.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch devices, all of which use Apple's proprietary "iOS" operating system, and desktop and laptop computers based on Apples proprietary "Mac OS" operating system.  Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

      a.   Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and iCloud.com.

      b.   iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

      c.   iCloud is a file hosting, storage, and sharing service provided by Apple.  iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

---

[1]     The information in this section is based primarily on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/iCloud/; "iCloud: iCloud storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.

d.  iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via iCloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e.  Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f.  Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

g.  Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h.  App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or

9

through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

22. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

23. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @iCloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

24. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the

10

account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

25.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

26.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through iCloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

11

27.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups.  Where the user of an iOS device has connected that device to his or her Apple ID, the device will send iOS device backups to iCloud by default.  iOS device backups may also be manually sent to iCloud by an iOS device's user.  iOS backups can contain an iOS device's photos and videos (including photos and videos taken with the iOS device itself, or which are sent to the iOS device by another device and saved by the user, as well as "screenshots" taken by an iOS device user, which depict the contents of an iOS device's display at the moment they are taken), text messages (including iMessages, Short Message Service ("SMS") messages (standard text messages) and Multimedia Messaging Service ("MMS") messages (messages that include multimedia content, such as photos or videos, which commonly appear alongside text messages in an iOS device's messaging application)), information regarding email sent, received or accessed through Apple's proprietary iOS Mail application (specifically, email "header" information, containing "to" and "from" addresses, the date, and the subject line), voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data, from multiple iOS devices, including from iOS devices that are no longer in use.  In addition, in my training and experience, information sent to and stored by a remote computing service provider like Apple may be retained by the provider, in some form, even after a user directs the provider to delete it.  Records and data associated with third-party apps

12

may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud. Information about, and/or the content of, emails sent, received or accessed on the iOS device using third-party email applications, like Gmail and others, is also commonly contained in iOS device backups. Moreover, iOS device users can also choose to back up to iCloud the *content* of email sent, received or accessed through Apple's proprietary iOS Mail application (as opposed to mere header information for such emails, as is commonly contained in an iOS device backup, as described above). Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

28.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

29.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation, as well as information regarding iOS devices' physical location on certain dates and times relevant to the investigation. Based on my training and experience, and as illustrated by the facts set forth above, instant messages, text messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

30.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

31.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

14

33.     Therefore, Apple's computers are likely to contain all of the material described above, including stored electronic communications and information concerning subscribers and their use of Apple's services, such as account access information, transaction information, and other account information. In my training and experience, such information may constitute evidence of the crimes under investigation, including information that can be used to identify the Apple ID's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

34.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

35.     Based upon the foregoing, there is probable cause to believe that Apple is in possession or control of records and information of the types described above and in Attachment B, and others, relating to the Apple ID described in Attachment A, which records and information include evidence of violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1001 (False Statement). Therefore, I respectfully request this Court to issue a warrant to search all content and information associated with the Apple ID depicted and described in Attachment A which is stored at premises owned, maintained, controlled, or operated by Apple, and to seize the evidence, fruits,

15

and instrumentalities described in Attachment B, which individually or collectively constitute the violations described above, or evidence thereof.

Respectfully submitted,

/S/ Phillip Garret (BAB)
_Telephonically Signed Before_

Phillip Garrett
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February 7 , 2022

BARRY BRYANT
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Apple ID **SHAWNCAREY883@GMAIL.COM** (the "the account") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at 1 Infinite Loop, Cupertino, CA 95014.

2

## ATTACHMENT B

## Particular Things to be Seized

### I.      Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account, identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

1

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The contents of all emails associated with the account, from April 01, 2021 through January 28, 2022, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the account, April 01, 2021 through January 28, 2022, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact

and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

     f.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging and query logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers);

     g.     All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services;

     h.     All records pertaining to the types of service used;

     i.     All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

     j.     All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

3

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and/or instrumentalities of violations of Title 18, United States Code, Section 1001, False Statement and Title 18, United States Code, Section 1343, Wire Fraud, from April, 2021 through January 28, 2022, including, for each account or identifier listed in Attachment A, information pertaining to the following matters:

(a)     The identity of the person(s) who created or used the Apple ID;

(b)     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

(c)     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

(d)     Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

(e)     Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.